UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TERRY E. COLEMAN,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:15-cv-596
Barrett, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff Terry E. Coleman brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's statement of errors (Doc. 9), the Commissioner's response in opposition (Doc. 16), and plaintiff's reply memorandum (Doc. 17).

## I. Procedural Background

Plaintiff filed his application for DIB in August 2012, alleging disability since June 14, 2012 due to two strokes, paranoia, migraines, gout, complications from a 1976 gunshot wound to his side, and cramps in his hand. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a hearing before administrative law judge ("ALJ") John Prince. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On July 24, 2014, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

2

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since June 14, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: episodic acute gouty attacks, hypertension, mild arthrosis of the right wrist, anxiety, a personality disorder, and borderline intellectual functioning (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the [plaintiff] has the residual functional capacity [("RFC")] to perform medium work as defined at 20 CFR 404.1567(b) except the work must involve simple, routine, repetitive 1-2 step work-related tasks that requires no more than 6th grade reading. It must be a non-rapid production-paced environment with no more than intermittent and superficial contact with the public, no more than brief, infrequent, and superficial contact with coworkers, and no more than occasional contact with supervisors. There can be no close teamwork or tandem work, no supervisory or management positions, no transactional or negotiational-type work, and no more than routine and occasional changes in the job setting that can be explained.
>
> 6. The [plaintiff] is unable to perform past relevant work (20 CFR 404.1565).[1]
>
> 7. The [plaintiff] was born [in] 1957, and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563).

---

[1] Plaintiff's past relevant work was as a molder, a medium exertion, semi-skilled position. (Tr. 34, 63, 378).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not [he] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 14, 2012, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 25-35).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative medium occupations such as a cleaner (1,800 jobs locally, 200,000 jobs nationally), a packer (1,000 jobs locally, 75,000 jobs nationally), and a material handler (150,000 jobs nationally). (Tr. 34-35, 70).

4

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues the ALJ misinterpreted the treating source opinion and erred by affording it little weight. Plaintiff also contends the ALJ improperly assessed his credibility. (Docs. 9, 17).

#### 1. Substantial evidence supports the ALJ's assessment of the treating physician's opinion.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or

5

who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(c)(2)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p, 1996 WL 374188 at *5 (1996)). This procedural requirement "ensures that the ALJ

6

applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

Plaintiff sought mental health treatment at the Crossroads Center in September 2013 for substance abuse and increased bouts of anxiety, panic, and depression. (Tr. 499). He reported that he had never been diagnosed with a mental health disorder. (*Id.*). At intake, plaintiff was diagnosed with alcohol and cannabis dependence. (Tr. 500). He was assigned a GAF score of 52.[3]

In October 2013, plaintiff was seen by psychiatrist Roberto Soria, M.D. (Tr. 502-03). Plaintiff reported a history of anxiety, depression, and anger. (Tr. 502). Plaintiff reported that he began using alcohol at age 12 and cannabis at age 16. He had been incarcerated several times, "all of them drug and alcohol related." (*Id.*). Plaintiff reported a tendency to snap at others when he felt disrespected, especially after he lost his job in 2012. Plaintiff told Dr. Soria about being shot when he was 23 and witnessing his best friend's death, which he still dreamed about. Plaintiff denied any prior psychiatric treatment or medication. Plaintiff's mental status examination was unremarkable. Dr. Soria diagnosed major depressive disorder and posttraumatic stress disorder ("PTSD"). (*Id.*). Dr. Soria prescribed the antidepressants paroxetine and nortriptyline. (Tr. 503).

In November 2013, Dr. Soria reported that plaintiff's mood was "stable, no worse no better." (Tr. 506). Plaintiff had not yet filled the prescriptions for the antidepressants that Dr.

---

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. Individuals with GAF scores of 51 to 60 have "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

Soria prescribed because he "went to the wrong pharmacy and was told it would be $60 instead of the $8 [Dr. Soria] mentioned." (*Id.*). Plaintiff relapsed by smoking marijuana while playing in his band the previous week. Plaintiff expressed concern that his unemployment benefits were about to end. Plaintiff's mental status examination was unremarkable. (*See id.*).

In December 2013, Dr. Soria noted that plaintiff's mood was improved. (Tr. 508). Plaintiff "endorse[d] not getting angry as he used to," was "also learning to avoid triggers," and "[h]is sleep [w]as significantly improved." (*Id.*). Plaintiff was homeless, but was house sitting until early 2014. He continued to use marijuana "infrequently, mostly when stressed." (*Id.*). Plaintiff's mental status examination was unremarkable. (*See id.*).

On January 17, 2014, plaintiff saw Robert Frey, a psychiatric mental health nurse practitioner. (Tr. 510-11). Mr. Frey noted the following:

> [Plaintiff] is trying to work with a lawyer to obtain disability but the paperwork he has given Dr. Soria has not been completed. Dr. Soria does not believe he meets the criteria for disability and this patient is very displeased with this matter stating "he may sue The Crossroads Center" if Dr. Soria does not fill out his paperwork. He states to me his moods have improved and he is sleeping better now.

(Tr. 510). On mental status examination, plaintiff's mood was agitated/labile. (*Id.*).

On January 22, 2014, Dr. Soria completed a statement of disability in which he listed plaintiff's diagnoses of major depressive disorder and PTSD. (Tr. 504). Dr. Soria assigned plaintiff a GAF score of 60-65.[4] Dr. Soria reported that plaintiff's attention was mildly impaired and his concentration was moderately impaired. However, Dr. Soria indicated that plaintiff's symptoms were not of such severity that they would preclude him from normal social/occupational functioning. Dr. Soria marked plaintiff's current status as improved. (*Id.*). The form asked Dr. Soria to consider plaintiff's ability to perform work-related activities on the

---

[4] Individuals with GAF scores of 61 to 70 have "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

8

following scale: full ability (68-100%/day), moderate ability (34-67%/day), minimal ability (0-33%/day), no ability, or not assessed. (Tr. 505). Dr. Soria indicated that plaintiff had full ability to perform the following activities: (1) follow work rules; (2) relate to coworkers; (3) use judgment; (4) function independently; (5) maintain attention and concentration; (6) understand, remember, and carry out simple, detailed, and complex job instructions; (7) maintain personal appearance; and (8) demonstrate reliability. Dr. Soria indicated that plaintiff had moderate ability to perform the following activities: (1) deal with the public; (2) interact with supervisors; (3) deal with supervisors; (4) deal with work stresses; (5) persist at work-like tasks; (6) behave in an emotionally stable manner; and (7) relate predictably in social situations. (*Id.*).

In April 2014, Mr. Frey noted that plaintiff's mental status examination was unremarkable. (*See* Tr. 575). Plaintiff was discharged from treatment in May 2014. (Tr. 569). Lisa Mikhail, plaintiff's counselor, indicated that his overall progress in treatment was "much improved." His GAF score at discharge was 80.[5] Ms. Mikhail noted that plaintiff was able to stop using marijuana and he applied what he learned in treatment to his life. Plaintiff noted that his life was changed and he was pleased with his progress. (*Id.*).

The ALJ gave little weight to Dr. Soria's assessment. (Tr. 33). The ALJ noted that Dr. Soria "provide[d] no explanation for the checkmarks he puts in the boxes on his form." (*Id.*). Further, Dr. Soria assessed a GAF of 60-65, "which indicates symptoms at the upper end of the moderate range to the middle of the mild range." (*Id.*). The ALJ also noted that Dr. Soria "opined that the claimant has a 'full' or 'moderate' ability to make occupational adjustments, to make performance adjustments, and to make personal-social adjustments." (*Id.*). The ALJ

---

[5] Individuals with GAF scores of 71 to 80 have "no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." DSM-IV at 34. Further, "[i]f symptoms are present, they are transient and expectable reactions to psycho-social stressors (e.g., difficulty concentrating after family argument)." *Id.*

9

concluded that "[t]hese ratings are not consistent with a finding of 'disabled.'" (*Id.*). Finally, the ALJ noted that plaintiff "was not pleased with Dr. Soria, and threatened to sue Crossroads." (*Id.*).

Plaintiff argues the ALJ "fundamentally misinterpreted" the meaning of "moderate ability" in Dr. Soria's opinion because the form defined "moderate ability" as being able to perform an activity 34-67% of the work day. (Doc. 9 at 2-3). Plaintiff contends that the opinion that he had only a moderate ability to persist at work-like tasks is consistent with a finding of disability because the VE testified that a person who would be off task more than 20% of the work day was not employable. (*Id.* at 3). Plaintiff argues the ALJ improperly declined to give Dr. Soria's opinion controlling weight even though it was consistent with other substantial evidence. (*Id.* at 4). Plaintiff contends the ALJ failed to provide good reasons for discounting Dr. Soria's opinion and failed to adequately discuss all the regulatory factors. (*Id.*). Plaintiff argues that Dr. Soria's progress notes support his opinion. (*Id.* at 5). Plaintiff contends the ALJ's reliance on GAF scores was improper because they have been eliminated from the latest edition of the DSM for being too subjective. (*Id.* at 5-6).

The Commissioner responds that the ALJ properly weighed the medical opinions of record and assessed an RFC that was supported by substantial evidence. (Doc. 16 at 4). The Commissioner argues the ALJ was entitled to give little weight to Dr. Soria's opinion because he provided no explanation for the checkmarks he put in the boxes on the form. (*Id.* at 6). The Commissioner contends that the objective information Dr. Soria entered on the form and Dr. Soria's own treatment notes "do not support Plaintiff's argument that this checkbox form shows he is disabled." (*Id.* at 6-8). The Commissioner argues that Dr. Soria "may not even be considered a treating source" because he only saw plaintiff on three occasions. (*Id.* at 8 n.3).

10

The Commissioner contends that interpreting the form to require a finding of disability if there was a check in any box other than full ability "defies common sense and would make this form virtually useless." (*Id.* at 9). The Commissioner argues that plaintiff's reading of Dr. Soria's form to require a finding of disability "is also at odds with the record as a whole and the physician's own opinion." (*Id.*). The Commissioner contends that while GAF scores are not dispositive standing alone, "ALJs can use them in determining a claimant's RFC." (*Id.* at 10). The Commissioner argues the ALJ properly gave greater weight to the opinions of the consultative examiners and non-examining state agency reviewing physicians. (*Id.* at 10-11).

In reply, plaintiff argues the Commissioner "is simply engaging in post-hoc rationalization, attempting to offer an explanation which the ALJ himself had not given" in contending that plaintiff's interpretation of the meaning of "moderate ability" is illogical and unsupported. (Doc. 17 at 3). Plaintiff contends that this argument of the Commissioner "is simply not true" because "not every limitation on this form would render the individual unemployable." (*Id.*). Plaintiff argues that because the ALJ did not question Dr. Soria's status as a treating source, the Commissioner may not do so now. (*Id.* at 4 n.1). Plaintiff contends the ALJ improperly refused to give Dr. Soria's opinion controlling weight. (*Id.* at 5). In the alternative, plaintiff argues that the ALJ failed to weigh Dr. Soria's opinion under the regulatory factors in 20 C.F.R. § 404.1527(c). (*Id.* at 5-6).

Here, the ALJ gave good reasons for not giving Dr. Soria's opinion controlling weight and those reasons are substantially supported by the record. First, the ALJ properly noted that Dr. Soria provided no explanation for the checkmarks he put in the boxes on the opinion form. (*See* Tr. 33). The Sixth Circuit has held that an ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and

11

documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992)). The checkmarks that Dr. Soria made in the form are conclusory as he provided no explanation of what objective criteria and documentation supported his opinions.

Further, in discounting Dr. Soria's opinion, the ALJ properly referenced the GAF scores that Dr. Soria assessed. Even though GAF scores were eliminated in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-V"), which was published in 2013 (*see* Doc. 9 at 5-6), the Sixth Circuit has since explained that GAF scores "may assist an ALJ in assessing a claimant's mental RFC." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 835 (6th Cir. 2016). Further, the Sixth Circuit held that "although a GAF score is 'not essential to the RFC's accuracy,' it nevertheless 'may be of considerable help to the ALJ in formulating the RFC.'" *Id.* at 836 (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). Thus, the ALJ properly considered plaintiff's GAF scores as one factor in assessing the weight to give Dr. Soria's opinion.

The ALJ also properly noted that plaintiff threatened litigation if Dr. Soria did not complete a medical opinion for disability purposes. (*See* Tr. 33, 510). Specifically, in a treatment note entered five days before Dr. Soria completed his opinion, Mr. Frey noted that Dr. Soria did not believe plaintiff "meets the criteria for disability" and plaintiff threatened to sue the Crossroads Center if Dr. Soria did not complete the disability opinion. (Tr. 510). It was reasonable for the ALJ to note these circumstances in discounting Dr. Soria's opinion as this threat of litigation may have impacted the responses Dr. Soria gave in his opinion or his decision to even complete a medical opinion at all.

Finally, plaintiff argues that Dr. Soria's opinion that plaintiff had a moderate ability to persist at work-like tasks (i.e., for 34-67% of the workday) proves that he was disabled given the VE's testimony that being off-task more than 20% of the workday would be work preclusive. (Doc. 9 at 3). However, substantial evidence supports the ALJ's conclusion that this finding and other findings of moderate ability in Dr. Soria's opinion were not consistent with a finding of "disabled." (*See* Tr. 33). First, in the same opinion Dr. Soria opined that plaintiff's symptoms were not of such severity that they would preclude him from normal occupational functioning. (Tr. 504). Moreover, Dr. Soria's mental status examinations of plaintiff were unremarkable and he did not note any objective findings—either on the opinion form or in his treatment notes—to support his opinion that plaintiff had only moderate ability to persist at work-like tasks. (*See* Tr. 502, 504, 506, 508). Thus, the ALJ reasonably concluded that Dr. Soria's opinion was inconsistent with a finding of disability.

For these reasons, the Court determines that the ALJ reasonably declined to give Dr. Soria's opinion controlling weight. *See Gayheart*, 710 F.3d at 376.

Moreover, substantial evidence supports the ALJ's weighing of the regulatory factors in affording little weight to Dr. Soria's opinion. *See* 20 C.F.R. § 404.1527(c)(2)-(6). In his decision, the ALJ noted that he weighed the "opinion evidence in accordance with the requirements of [§ 404.1527]." (Tr. 30). Contrary to plaintiff's argument, the ALJ is not required to give "an exhaustive factor-by-factor analysis" of the regulatory factors. *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011). Instead, the ALJ is required only to give good reasons for the weight given to a medical opinion. *Id.* (citing 20 C.F.R. § 404.1527(c)(2)). Further, in *Allen v. Comm'r of Soc. Sec.*, the Sixth Circuit held that even though an ALJ's reason for discounting a physician's opinion was "brief" and did not expressly

13

refer to any of the regulatory factors, the reason was sufficient because it was a "good reason" and it "reache[d] several of the factors that an ALJ must consider when determining what weight to give a non-controlling opinion by a treating source." 561 F.3d 646, 651 (6th Cir. 2009).

Here, as already explained, the reasons the ALJ gave in support of discounting Dr. Soria's opinion were good reasons. Further, these reasons "reache[d] several of the factors that an ALJ must consider." *Allen*, 561 F.3d at 651. For example, the ALJ's comment that Dr. Soria was "apparently" plaintiff's treating physician reaches the nature, length, and extent of the treatment relationship. (Tr. 33); 20 C.F.R. § 404.1527(c)(2). The ALJ's comments about the lack of explanation for Dr. Soria's opinion and the relatively high GAF scores address the factors of supportability and consistency. (Tr. 33); 20 C.F.R. § 404.1527(c)(3)-(4). Finally, the ALJ's comment about plaintiff's threatened litigation against the Crossroads Center if Dr. Soria did not complete a disability opinion is a factor "which tend[s] to support or contradict the opinion." (Tr. 33); 20 C.F.R. § 404.1527(c)(6). Thus, the ALJ stated good reasons for discounting Dr. Soria's opinion that are consistent with the regulatory factors the ALJ must consider. Accordingly, substantial evidence supports the ALJ's assessment of Dr. Soria's opinion and plaintiff's first and second assignments of error should be overruled.

### 2. Substantial evidence supports the ALJ's assessment of plaintiff's credibility.

The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. 31). The ALJ noted that although plaintiff complained of gout, the medical evidence did not support his complaints. (*Id.*). As to plaintiff's complaints of disabling wrist pain, the ALJ noted that plaintiff had either used or lifted a jackhammer, which was "inconsistent with allegations of disabling impairments such as those alleged by the [plaintiff]." (Tr. 31-32). The ALJ concluded that plaintiff's

membership in a band was not consistent with allegations of disabling impairments involving his hands. (Tr. 32). As to plaintiff's mental health impairments, the ALJ noted that plaintiff had failed to pursue earlier mental health treatment. The ALJ also noted inconsistent statements concerning plaintiff's use of tobacco and marijuana, plaintiff's criminal record, and plaintiff's threats of litigation against Dr. Soria. Finally, the ALJ concluded that plaintiff's "credibility was greatly damaged by his receipt of unemployment compensation benefits" during part of the time he claimed to be disabled. (*Id.*). The ALJ noted that "[i]n order to receive such benefits, individuals must state that they are able and willing to work, which is not consistent with their allegations to the Administration that they are unable to work due to health reasons." (*Id.*).

Plaintiff argues the ALJ selectively cited the medical record, ignored the episodic nature of gout attacks, and improperly overlooked the severity of plaintiff's gout. (Doc. 9 at 8; Doc. 17 at 7). Plaintiff contends the ALJ improperly referred to plaintiff's lack of consistent mental health treatment because "for some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." (Doc. 9 at 9). Plaintiff argues that the ALJ's analysis of plaintiff's receipt of unemployment benefits is "overly simplistic as it ignores th[e] fact that a person can qualify for Social Security Disability benefits even though he remains capable of performing some work." (*Id.*; Doc. 17 at 9). Plaintiff contends the ALJ failed to follow agency directives that an ALJ is to consider the "totality of the circumstances" in determining the significance of a claimant's application for unemployment benefits. (Doc. 9 at 9-10).

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton*, 246 F.3d at 773; *Kirk v. Sec'y of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v.*

15

*Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Here, substantial evidence supports the ALJ's finding that plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (*See* Tr. 31). The ALJ reasonably concluded that plaintiff's testimony concerning his gout was not consistent with the medical record. (*See id.*). At the hearing, plaintiff testified that he had gout attacks "about seven times a month." (Tr. 62). However, at a consultative examination with Jennifer Wischer Bailey, M.D., in September 2012, plaintiff reported that "he has gout affecting both great toes with flares occurring approximately every other month." (Tr. 448). Further, plaintiff reported that he was not under a physician's care and was taking no medication other than aspirin. (*Id.*). *See Rainey-Stiggers v. Comm'r of Soc. Sec.*, No. 1:13-cv-517, 2015 WL 729670, at *9 (S.D. Ohio Feb. 19, 2015) ("[A] claimant's failure to seek or pursue treatment may be a factor weighing against the claimant's credibility.") (citing *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004)). Dr. Wischer Bailey noted that plaintiff "had a completely normal, age appropriate examination" with "[n]o evidence of active gout or synovitis." (Tr. 449-50). While plaintiff complained of a three-week history of gout pain in August 2013, he had no pain on physical examination. (Tr. 494, 496). In September 2013, plaintiff reported that his gout had responded to prednisone, although he still had "a lot of pain in his right wrist and some swelling." (Tr. 489). His gout was "under control" in December 2013 and he reported feeling "fine" in January 2014. (Tr. 508, 510). On this record, substantial evidence supports the ALJ's finding that plaintiff's allegations concerning the severity of his gout were not entirely credible.

16

*See Rogers*, 486 F.3d at 241 (holding that substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . .").

In support of his argument that the ALJ improperly considered his failure to seek mental health treatment, plaintiff cites to *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009). In *White*, the Sixth Circuit recognized that "[f]or some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *Id.* However, the Sixth Circuit further stated: "But in this case there is no evidence in the record explaining White's failure to seek treatment during this half-year gap. A 'reasonable mind' might therefore find that the lack of treatment during the pre-November 4, 2002 time frame indicated an alleviation of White's symptoms." *Id.* at 283-84. Likewise, in the instant case there is no evidence in the record to explain why plaintiff never sought mental health treatment until he was actively pursuing disability benefits. Accordingly, the ALJ's consideration of plaintiff's lack of prior mental health treatment was not improper.

Finally, plaintiff argues that the ALJ improperly considered the fact that plaintiff received unemployment benefits while he was claiming to be disabled and was actively seeking disability benefits. However, the Sixth Circuit has held that "[a]pplications for unemployment and disability benefits are inherently inconsistent." *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004). Here, the ALJ properly discounted plaintiff's credibility because plaintiff's collection of unemployment benefits required him to attest that he was willing and able to work during the period he alleged he was disabled. *See Reed v. Comm'r of Soc. Sec.*, No. 1:13-cv-268, 2014 WL 1814025, at *7 (S.D. Ohio May 6, 2014) ("Reed argues that the mere receipt of unemployment benefits does not establish that he is not disabled. But it was not the fact that he received benefits that the ALJ cited: it was the fact that in order to receive those

17

benefits, Reed must attest that he is willing and able to work. The ALJ found that assertion 'obviously runs contrary to his current allegation that he has been totally disabled since November 1, 2008. . . .' The Court finds no error in this conclusion."). The Court acknowledges the August 9, 2010 memorandum of former Chief ALJ Frank Cristaudo, which indicates that "[r]eceipt of unemployment benefits does not preclude the receipt of Social Security disability benefits." (Doc. 17 at 14). However, ALJ Cristaudo's memorandum instructs that the receipt of unemployment benefits remains "one of many factors that must be considered in determining whether the claimant is disabled." (*Id.*). Here, the ALJ properly considered plaintiff's receipt of unemployment benefits as one of many factors, including those discussed above as well as plaintiff's inconsistent statements about his use of tobacco and marijuana and his threats to sue his mental health provider if he did not obtain a statement in support of his disability claim, in discounting his credibility.

Based on the foregoing, substantial evidence supports the ALJ's credibility determination. Accordingly, plaintiff's third assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **AFFIRMED**.

Date: 6/7/16

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TERRY E. COLEMAN,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:15-cv-596
Barrett, J.
Litkovitz, M.J.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).